Rory A. McMahon Informal Opinion Corporation Counsel No. 2007-10 City of Syracuse 300 City Hall Syracuse, New York 13202 Dear Mr. McMahon:
You have requested an opinion as to whether the provisions of Public Officers Law § 3(9), relating to residency requirements, apply to paid firefighters in the city of Syracuse ("the City"). The overarching question you have asked is whether the City's paid firefighters must reside within Onondaga County. As explained below, we are of the opinion that Public Officers Law § 3(9) does not apply to the City's paid firefighters, and that they must reside within Onondaga County.
I. Background
Public Officers Law § 3 sets forth qualifications for holding public office. It provides, in relevant part, that no person is capable of holding a local office unless he or she is "a resident of the political subdivision or municipal corporation of the state for which he shall be chosen . . . or within which his official functions are required to be exercised." Public Officers Law § 3(1). It also establishes numerous exceptions to this general rule. With respect to firefighters, it provides that
 [e]xcept as otherwise provided in subdivision nine of this section, persons heretofore or hereafter employed in the paid fire department of a city, town, village or fire district shall not be deemed to be holding a civil office or a local office within the meaning of this section and the provisions of this section shall not apply to such persons. The *Page 2 
provisions of any general, special or local law, city or village charter, code or ordinance, or any rule or regulation requiring a person to be a resident of the political subdivision or municipal corporation of the state for which he shall be chosen or within which his official functions are required to be exercised shall not apply to the appointment or continuance in office of any such person so employed, if such person resides in the county, or one of the counties, in which such political subdivision or municipal corporation is located.
Public Officers Law § 3(4). You have explained that the City's charter requires that city employees live within the City.
Under the plain language of subdivision 4 of section 3, persons employed in the paid fire department of the City are not subject to the residency requirement of section 3 because they are not holding a local office within the meaning of that section. Moreover, under the authority of this provision, if an employee of the paid fire department of the City is required by any law, including the city charter, to reside within the City, that requirement is deemed satisfied if the employee lives in Onondaga County, the county in which the City is located.
Subdivision four is qualified by subdivision nine of section three, expressly exempting certain public employees from state and local residency requirements. Subdivision nine provides that
 [n]either the provisions of this section, nor of any general, special or local law, charter, code, ordinance, resolution, rule or regulation, requiring a person to be a resident of the political subdivision or municipal corporation of the state for which he or she shall be chosen or within which his or her official functions are required to be exercised, shall apply to the appointment of a paid member of the uniformed force of a paid fire department, who, for purposes of this section shall include persons employed as fire alarm dispatchers, or to the appointment of
any person employed in a department of correction in the correction service classification of the classified civil service, or to the appointment of officers and inspectors who are employees of a department of health of any city of over one million population who *Page 3 resides (a) in the county in which such city is located; or (b) in acounty within the state contiguous to the county in which said city islocated; or (c) in a county within the state contiguous to such city; or(d) in a county within the state which is not more than fifteen milesfrom said city.
Public Officers Law § 3(9) (emphasis added).
The question thus is whether the language in the exemption underlined above, relating to cities "of over one million population," qualifies all three groups covered by the exemption, namely certain members of a paid fire department, certain employees of a department of correction, and certain employees of a department of health, or whether it qualifies only certain employees of a department of health. As explained below, we conclude that the underlined language applies to all three groups of persons, and thus, because Syracuse is not a city of over one million population, that subdivision nine does not apply to Syracuse firefighters.
II. Analysis
The history of subdivision nine demonstrates that the exemption provided by the subdivision as a whole — and not merely the part pertaining to health department employees — was intended to apply to New York City (a "city of over one million in population"). As first enacted, the statute unambiguously provided that
 [n]either the provisions of this section, nor of any general, special or local law, charter, code, ordinance, resolution, rule or regulation, requiring a person to be a resident of the political subdivision or municipal corporation of the state for which he shall be chosen or within which his official functions are required to be exercised, shall apply to the appointment of a paid member of the uniformed force of a paid fire department of any city of over one million population who resides (a) in the county in which said city is located; or (b) in a county within the state contiguous to the county in which said city is located; or (c) in a county within the state contiguous to such city; or (d) in a county within the state which is not more than fifteen miles from said city. *Page 4 
Act of April 30, 1962, ch. 976, § 1, 1962 N.Y. Laws 3847, 3847-48. It was understood at the time to pertain to the members of the uniformed force of the New York City Fire Department, and indeed was enacted with the approval of New York City. See, e.g., Letter from Robert F. Wagner, mayor, New York City, to Nelson A. Rockefeller, Governor (April 25, 1962), reprinted in Bill Jacket for ch. 976 (1962), at 5-6; Letter from Charles W. Potter, assistant counsel, Local Government Advisory Board, to Robert MacCrate, counsel to the Governor (April 18, 1962),reprinted in Bill Jacket for ch. 976 (1962), at 9-11.
Subsequent amendments to subdivision nine related to the residency requirements that applied to the appointment of "any person employed in a department of correction in the correction service classification of the classified civil service," Act of April 16, 1963, ch. 375, § 1, 1963 N.Y. Laws 1749, 1749, and "officers and inspectors who are employees of a department of health," Act of July 16, 1965, ch. 865, § 1, 1965 N.Y. Laws 2064, 2065. Although it was recognized that "[t]he interposition of the new matter added" by the amendments "between the reference to paid fire department members and the reference to a city of over one million population, coupled with the repetition in the new matter of `to the appointment of' . . . might suggest that as thus amended these provisions would apply to all paid fire department members and not be limited to only those in a city of over one million population," Memorandum from H. Eliot Kaplan, president, State Department of Civil Service (April 4, 1963), reprinted in Bill Jacket for ch. 375 (1963), at 4, these amendments implemented an intent only to expand the type of officers and employees to whom the New York City rule applied, not to alter the earlier applicability of the rule to New York City's paid firefighters. See Memorandum from Thomas J. Mackell, State Senator, to Nelson A. Rockefeller, Governor (April 2, 1963), reprinted in Bill Jacket for ch. 375 (1963), at 1-2; Budget Report on Bill (July 9, 1965),reprinted in Bill Jacket for ch. 865 (1965), at 5; see also Budget Report on Bill (July 8, 1965), reprinted in Bill Jacket for ch. 985 (1965), at 47 ("This bill [amending subdivision four to its current form] exempts all employees of `paid fire departments' outside New York City from local residency requirements for appointment . . . [to] office as long as the fireman lives in a county in which the political subdivision is located. . . . Although not affected by this bill, [a] separate subdivision ([§ 3(9)]) govern[s] residence requirements at the time of appointment . . . for New York City firemen.").
Based upon this history, we conclude that subdivision nine of Public Officers Law § 3 does not pertain to the paid members of the uniformed force of the City's paid fire department, and that they *Page 5 
are therefore governed by subdivision four. This is consistent with earlier interpretations of subdivisions four and nine by this Office, as reflected in previous opinions. See Op. Att'y Gen. (Inf.) No. 97-6;[1]
1975 Op. Att'y Gen. (Inf.) 241.[2] Because the City's charter requires that city employees live within the City, we further conclude that, pursuant to Public Officers Law § 3(4), persons employed in the City's paid fire department must reside within Onondaga County.
The Attorney General issues formal opinions only to officers and departments of state government. Thus, this is an informal opinion rendered to assist you in advising the municipality you represent.
Very truly yours,
KATHRYN SHEINGOLD Assistant Solicitor General In Charge of Opinions
[1] In this opinion, we stated, "Under section 3(4), persons employed in a paid fire department of a city (regarding a city of over one million in population see, section 3[9]), town, village or fire district are deemed not to hold a civil or local office within the meaning of section 3 and the provisions of that section do not apply to these persons." 1997 Op. Att'y Gen. (Inf.) 1014, 1015.
[2] In this opinion, we explained that "[s]ubdivision 9 of section 3 . . . [was] enacted by Chapter 976 of the Laws of 1962 and relate[s] only to residency requirements for firemen in the fire department of the City of New York and contain[s] geographical provisions broader than those which apply to paid fire department personnel throughout the rest of the State. Subsequent amendments have added to the types of employment contemplated in Public Officers Law [§ 3(9)], but its applicability has continued to be restricted to New York City." 1975 Op. Att'y Gen. (Inf.) 241, 244.